IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM EDWARD DOLAN,<br>Plaintiff, | : | Case No. |
| | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| 3M COMPANY,<br>Defendant. | : | |
| | : | |
| | : | |

## COMPLAINT-CIVIL ACTION

Plaintiff, WILLIAM EDWARD DOLAN by and through the undersigned counsel, brings this Complaint seeking judgment against Defendant 3M COMPANY; (hereinafter referred to as "Defendant," "3M," or "3M/Aearo") for personal injuries incurred while in training and/or on active military duty, resulting from Defendant's defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms earplugs"). At all relevant times, the Dual-ended Combat Arms earplugs were manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and sold by Defendant.

## INTRODUCTION

1.      Plaintiff, a United States Army Veteran, brings this suit to recover damages arising from personal injuries sustained while in training and/or on active military duty domestically and abroad. Plaintiff used Defendant's dangerously defective Dual-ended Combat Arms earplugs during tank firing, training firing, other live fire training, vehicle maintenance, and other training and combat exercises. Defendant sold the Dual-ended Combat Arms earplugs to the U.S. military for more than a decade without the military and/or Plaintiff having any knowledge of the defect(s) and failed to adequately warn the military and/or Plaintiff of the defect(s).

1

2.      Defendant's Dual-ended Combat Arms earplugs were standard issue in certain branches of the military (including Plaintiff's) between at least 2003 to at least 2015. Thus, Defendant's Dual-ended Combat Arms earplugs have likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to, pain and suffering and loss of the pleasures of life.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff, a United States Army Veteran, is a citizen and resident of Pennsylvania.

4.      Defendant is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota. Among other things, Defendant is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators.  Defendant has a dominant market share in virtually every safety product market, including hearing protection.  Defendant is one of the largest companies in the country.

5.      Among other things, Defendant 3M is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators and is one of the largest companies in the United States.

6.      At all times relevant hereto, Defendant 3M acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

7.      At all times relevant hereto, Defendant, 3M, purposely established significant contacts in Pennsylvania, including but not limited to, registration as a foreign corporation doing business in Pennsylvania, and has carried out, and continues to carry out, substantially continuous and systematic business activities in Pennsylvania.

8.      This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different states.

9.      Personal jurisdiction over Defendant is proper because it has done business in the Commonwealth of Pennsylvania, has committed a tort in whole or in part in the Commonwealth of Pennsylvania, has substantial and continuing contact with the Commonwealth of Pennsylvania, and derives substantial revenue from goods used and consumed within the Commonwealth of Pennsylvania.

10.     Plaintiff's claims arise out of Defendant's purposeful contacts with Pennsylvania. Plaintiff was a citizen of Pennsylvania at all relevant times. Plaintiff was also first diagnosed with hearing issues in Pennsylvania.  Plaintiff further suffered injuries complained of herein within the Eastern District of Pennsylvania.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

12.     Based upon information and belief, and in part upon the pleadings and allegations as contained in *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, Case No. 3:16-cv-01533-DCC (D.S.C. 2016), Plaintiff states as follows:

13.     In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it fraudulently supplied the United States with defective 3M Dual-Ended Combat Arms™ earplugs.

14.     Defendant's Dual-ended Combat Arms earplugs are non-linear, or selective attenuation, earplugs that were designed to provide soldiers with two different options for hearing

attenuation depending upon how the plugs are worn. Both sides of the dual-sided earplugs were purported to provide adequate protection for soldier's ears when worn.

15.     If worn in the "closed" or "blocked" position (olive side in user's ear), the earplugs are intended to act as a traditional earplug and block as much sound as possible.

16.     If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants.

17.     Defendant's standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

18.     The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

19.     When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in their ear canals and providing inadequate protection.

20.     Because the earplugs are symmetrical, following the standard fitting instructions will result in a loosening of the seal regardless of which side is inserted into the ear canal.

21.     These earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

22.     Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, (and thus 3M is liable for Aearo's conduct as alleged herein).

23.     Earplugs like the Dual-ended Combat Arms earplugs are sold with a stated Noise Reduction Rating ("NRR")[1] that should accurately reflect the effectiveness of hearing protection.

24.     The military likely purchased, at a minimum, one pair of 3M's Combat Arms earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See* McIlwain, D. Scott *et al.*, *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

25.     3M's/Aearo's Dual-ended Combat Arms earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the military until at least late 2015, when Defendant discontinued the earplugs.

26.     The defective earplugs have not been recalled and therefore are likely in continued use by service members.

### History of Testing: January 2000

27.     Employees from 3M/Aearo began testing the Dual-ended Combat Arms earplugs in approximately January 2000.

28.     3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

29.     3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms earplugs.

---

[1] Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Hearing protectors are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound. They must be tested and approved by the American National Standards ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines. The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

30.     3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the Dual-ended Combat Arms earplug inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the Dual- ended Combat Arms earplug inserted. This testing was designed to provide data regarding the NRR of the Dual- ended Combat Arms earplugs.

31.     3M/Aero personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not achieved.

32.     Eight of the ten subjects were tested using both the open and closed end of the Dual-ended Combat Arms earplugs.

33.     Testing of the eight subjects suggested an average NRR of 10.9, which was far below the adequate NRR that 3M/Aero personnel would and should have expected for the closed end.

34.     3M/Aero prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

35.     3M/Aero personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptibly to the wearer.

36.     The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

37.     3M/Aero personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

38.     3M/Aearo personnel decided not to test the closed end of the Dual-ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR.

39.     3M/Aero completed testing of all ten subjects with the open end of the Dual-ended Combat Arms earplugs to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

40.     3M/Aero represented the -2 NRR as a "0" NRR, which 3M/Aero has displayed on its packaging since its launch.

41.     3M/Aero falsely touts the "0" NRR as a benefit of the Dual-ended Combat Arms earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. However, the "true" -2 NRR actually amplifies sound, thereby exposing the wearer to harm.

### History of Testing: February 2000

42.     Upon identifying the fit issue, 3M/Aero re-tested the olive, closed end of the Dual-ended Combat Arms earplug in February 2000 using different fitting instructions.

43.     When testing the closed end, 3M/Aero personnel folded back the yellow flanges on the open end of the Dual-ended Combat Arms earplugs prior to insertion.

44.     Using this "modified" fitting procedure, 3M/Aero achieved a "22" NRR on the closed end of the Dual- ended Combat Arms earplug.

45.     3M, however, never properly warned serviceman that the only potential way to achieve this purported NRR was to modify the Dual- ended Combat Arms earplug by folding the yellow flanges on the opposite end.

46.     The yellow, open end of the Dual- ended Combat Arms earplug was not re-tested using the "modified" fitting procedure.

**Defendant's Representations and Omissions**

47.     Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the U.S. military in response to Requests for Production ("RFP").

48.     From 2003-2012, 3M/Aearo was the exclusive supplier of this type of earplugs to the U.S. military.

49.     3M/Aearo was aware of the design defects alleged herein in as early as 2000.

50.     Accordingly, the defects of the Dual-ended Combat Arms earplugs were known to Defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the U.S. military.

51.     3M/Aearo knew at the time it bid for the initial IQC that the Dual-ended Combat Arms earplugs had dangerous design defects, as they would not adequately protect the users from loud sounds. Defendant did not adequately warn of the defects and did not adequately warn or instruct how to wear the earplugs.

52.     3M/Aero responded to the military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

53.     3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

54.     3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to not only the wearer but also trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the

earplug, while the user and/or audiologist incorrectly believes that the earplug is working as intended.

55.     The pertinent Salient Characteristics set forth in the MPID, which was uniform across all RFPs, in relevant part, are as follows:

> 2.1.1. Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.
>
> **2.4 <u>Workmanship</u>. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.**
>
> **2.5 <u>Instructions</u>. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.**
>
> Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

56.     The Environmental Protection Agency ("EPA") also has promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, et seq., that govern the testing and attendant labeling of hearing protective devices like the Dual-ended Combat Arms earplugs. Specifically, 40 C.F.R. § 211.206-1 provides that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19- 1974.

57.     Additionally, 40 C.F.R. § 211.204-4(e) of the EPA regulations requires that certain "supporting information" must accompany hearing protection devices sold in the United States:

9

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location...Instructions as to the proper insertion or placement of the device. (emphasis added).

58.     3M/Aearo also knowingly used the deliberately-flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms earplugs to the military with the representation that they possessed a "22" NRR in the closed position.

59.     Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act, and the MPID.

60.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not instruct wearers to use the "modified" insertion method used in testing, which would require the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

61.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not warn wearers that subjects in testing did not follow these standard instructions, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

62.     Instead, Defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

63.     By failing to instruct wearers of the Dual-ended Combat Arms earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

64.   3M's/Aearo's packaging and marketing of such earplugs' standard insertion instructions and with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M's/Aearo's defective earplugs.

65.   Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M's/Aearo's instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

66.   3M's/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends, which are facially inadequate.

67.   3M/Aearo was aware prior to selling the earplugs to the military that its testing both ends of the Dual-ended Combat Arms earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the earplugs.

68.   Plaintiff reserves the right to supplement these facts after discovery.

**Plaintiff William Edward Dolan**

69.   Plaintiff, William Edward Dolan, enlisted in the Army in September of 1999 and served our country until his honorable discharge in 2016 as a Staff Sergeant.

70.   Prior to joining the military, Plaintiff had no signs or symptoms of hearing issues, hearing loss, or tinnitus.

71.   Plaintiff was issued 3M's Dual-Ended Combat Arms by the Army's Central Issue Facility.

72.     Plaintiff was deployed on active duty in Iraq from approximately August 2004 to July 2005.

73.     Plaintiff was deployed on active duty in Afghanistan from approximately May 2007 to July 2008,

74.     Plaintiff was deployed on active duty in Afghanistan from approximately October 2009 to September 2010.

75.     At the time of Plaintiff's deployment and during his pre-deployment training, the 3M Dual-Ended Combat Arms earplugs were standard issue.

76.     The Dual-ended Combat Arms earplugs were provided for single use while Plaintiff was deployed and during his pre-deployment training.

77.     Plaintiff wore the Dual-ended Combat Arms earplugs while in training and in the field.

78.     Plaintiff wore the 3M earplugs during all deployments and trainings, including but not limited to Iraq and Afghanistan, while firing weapons.

79.     Plaintiff was never instructed to fold back the flanges on the opposite side of use of the earplug.

80.     Plaintiff was first diagnosed with hearing issues in approximately 2016 at VA Medical Clinic under Gulf Coast Health System in Alexandria, LA.

## CAUSES OF ACTION

## COUNT I
## STRICT LIABILITY

81.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

82.     Defendant 3M, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

   a. Defendant is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce safety equipment, including the Dual-Ended Combat Arms™ earplugs, and the earplugs that caused Plaintiffs injuries;
   b. The product involved in the subject incident was marketed and placed in the general stream of commerce by Defendant 3M;
   c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce; and
   d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

83.     The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

84.     The product was in a defective condition as it came with absolutely no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

85.     The defective condition of the product caused Plaintiff's injuries and damages.

86.     Defendant 3M, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors, is strictly liable under § 402(A) of the Restatement of the Law of Torts (Second) and its progeny by:

   a. designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unreasonably dangerous;
   b. designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe and defective;

c.  designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe for all of its intended and foreseeable purposes and uses;

d.  designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product in a defective condition;

e.  designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that lacked all necessary safety features to protect users of said product;

f.  designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper warning;

g.  designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that could be designed more safely;

h.  designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper instructions;

i.  failing to provide adequate instructions to users of this product regarding the safe use of this product;

j.  failing to provide adequate instructions for the installation of this product;

k.  failing to provide users of this product with adequate warnings, instructions and/or training regarding the proper use of this product; performing inadequate testing and/or repairs to the product;

m.  failing to provide service bulletins and/or change options regarding changes to safety standards regarding the product;

n.  failing to retrofit the product with necessary safeguards to comply with industry standards;

o.  failing to provide and install guards;

p.  failing to follow the National Safety Council hierarchy of safe product design;

q.  failing to design Dual-ended Combat Arms earplugs in compliance with ANSI S3.19.

r.  failing to design the Dual-ended Combat Arms earplugs in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

s.  failing to properly and thoroughly test the Dual-Ended Combat Arms earplugs;

t.  failing to properly and thoroughly analyze the data resulting from testing of the Dual-Ended Combat Arms earplugs;

u.  designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

v.  designing, manufacturing, distributing, and selling the Dual-ended Combat Arms earplugs without providing proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner directed by Defendant's standard fitting instructions;

w.  failing to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-Ended Combat Arms earplugs; and

14

    x.  continuing to manufacture and distribute the Dual-Ended Combat Arms earplugs to the U.S. Military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

87.    By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

88.    By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiff's disabling personal injuries, including those set forth above.

89.    Defendant's conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Mr. Dolan.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## FAILURE TO WARN

90.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

91.    At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute the Dual-ended Combat Arms earplugs with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. Military.

92.    Plaintiff was a foreseeable user of the Dual-Ended Combat Arms earplugs.

93.    The Dual-Ended Combat Arms earplugs are defective, in part, in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

94.    The Dual-Ended Combat Arms earplugs contained no warnings, or in the alternative, contained inadequate warnings and/or instructions, as to the risk that the Dual-Ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to Plaintiffs hearing unbeknownst to him.

95.    The warnings and instructions that accompanied the Dual-Ended Combat Arms earplugs failed to provide that level of information that an ordinary consumer would expect when using the Dual-Ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

96.    Had Plaintiff received a proper or adequate warning as to the risks associated with the Dual-Ended Combat Arms earplugs, he would not have used the Dual-Ended Combat Arms earplugs.

97.    The Dual-Ended Combat Arms earplugs were the proximate cause of Plaintiff s hearing issues, hearing loss, and tinnitus because the design of the earplugs allows for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiffs hearing unbeknownst to him.

98.    By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

99.     By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiffs disabling personal injuries, including those set forth above.

100.    Defendant's conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Mr. Dolan.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT III
### NEGLIGENCE

101.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

102.    Defendant is in the business of designing, assembling, manufacturing, distributing, selling, and/or supplying safety products such as the Dual-ended Combat Arms earplugs.

103.    Defendant designed, assembled, manufactured, distributed, sold, supplied, and/or installed the Dual-ended Combat Arms earplugs.

104.    At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute the 3M Dual-ended Combat Arms earplugs with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-Ended Combat Arms earplugs during their service with the U.S. Military.

105.   Defendant, by and through its agents, servants, workers, contractors, suppliers, distributors and employees, breached their duties as follows:

   a.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unreasonably dangerous;
   b.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe and defective;
   c.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe for all of its intended and foreseeable purposes and uses;
   d.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product in a defective condition;
   e.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that lacked all necessary safety features to protect users of said product;
   f.   designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper warning;
   g.   designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that could be designed more safely;
   h.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper instructions;
   i.   failing to provide adequate instructions to users of this product regarding the safe use of this product;
   j.   failing to provide adequate instructions for the installation of this product;
   k.   failing to provide users of this product with adequate warnings, instructions and/or training regarding the proper use of this product; performing inadequate testing and/or repairs to the product;
   m.   failing to provide service bulletins and/or change options regarding changes to safety standards regarding the product;
   n.   failing to retrofit the product with necessary safeguards to comply with industry standards;
   o.   failing to provide and install guards;
   p.   failing to follow the National Safety Council hierarchy of safe product design;
   q.   failing to design the Dual-ended Combat Arms earplugs in compliance with ANSI 53.19;
   r.   failing to design the Dual-ended Combat Arms earplugs in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;
   s.   failing to properly and thoroughly test the Dual-Ended Combat Arms earplugs;
   t.   failing to properly and thoroughly analyze the data resulting from testing of the Dual-Ended Combat Arms earplugs;

u.  designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

v.  designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms without providing proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner directed by Defendant's standard fitting instructions;

w.  failing to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-Ended Combat Arms earplugs; and

x.  negligently continuing to manufacture and distribute the Dual-Ended Combat Arms earplugs to the U.S. Military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

106.  By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

107.  By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiff's disabling personal injuries, including those set forth above.

108.  Defendant's conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Mr. Dolan.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

109.  All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein

110.  Through Defendant's public statements, descriptions of the Dual-ended Combat Arms

earplugs, and promises relating to the Dual-ended Combat Arms earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

111.    These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms earplugs); (iii) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms earplugs which also downplayed the risks associated with the Dual-ended Combat Arms earplugs; and (iv) false and misleading written information and packaging supplied by Defendant.

112.    When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

113.    Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

114.    The Dual-ended Combat Arms earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

115.    Plaintiff further alleges that all of the aforementioned written materials are known to

Defendant and in its possession, and it is Plaintiff s reasonable belief that these materials shall be produced by Defendant and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

116.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to suffer serious and dangerous side effects, including tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT V
## BREACH OF IMPLIED WARRANTIES

117.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

118.    At all times material, Defendant was a merchant with respect to the Dual-ended Combat Arms earplugs.

119.    As a service member, Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

120.    At the time Defendant marketed, sold, and distributed the Dual-ended Combat Arms earplugs, Defendant knew of the use for which the Dual-ended Combat Arms earplugs were intended, impliedly warranted the Dual-ended Combat Arms earplugs to be fit for a particular purpose, and warranted that the Dual-ended Combat Arms earplugs were of merchantable quality and effective for such use.

121.    Defendant knew, or had reason to know, that Plaintiff would rely on Defendant's judgment and skill in providing the Dual-ended Combat Arms earplugs for its intended use.

21

122.     Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the Dual-ended Combat Arms earplugs were of merchantable quality, safe, and effective for its intended use.

123.     Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-ended Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

124.     The Dual-ended Combat Arms earplug was defectively designed and manufactured and was distributed and sold without the provision of reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to service members, including Plaintiff.

125.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff was caused to suffer serious and dangerous side effects, including tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI
## FRAUDULENT MISREPRESENTATION

126.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

127.     3M materially misrepresented to the Plaintiff that the Dual-Ended Combat Arms earplugs had been properly tested and were free from defects.

22

128.   3M knew or believed the Dual-Ended Combat Arms earplugs were improperly tested and/or suffered from material defects. 3M manipulated the testing of the Dual-Ended Combat Arms earplugs which resulted in a misleading NRR and inadequate fitting instructions.

129.   Defendant 3M made the false representations described herein with the intent of defrauding and deceiving Plaintiff and made the false representations with the intent of inducing Plaintiff to purchase, use, and/or continue to use the Dual-Ended Combat Arms earplugs.

130.   At the time Plaintiff used the Dual-Ended Combat Arms earplugs, Plaintiff was unaware of the false representations made by 3M.

131.   At the time Plaintiff used the Dual-Ended Combat Arms earplugs, Plaintiff reasonably believed the false representations to be true.

132.   By reason of Defendant's conduct and in reliance of the false representation, plaintiff sustained serious and permanent disabling personal injuries, including those as set forth above.

133.   By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

134.   By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiff's disabling personal injuries, including those set forth above.

135.   Defendant's conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Mr. Dolan.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT VII
### FRAUDULENT CONCEALMENT

136.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

137.    At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

138.    Defendants knew or were reckless in not knowing that their representations were false.

139.    In representations to Plaintiff, Defendant fraudulently concealed and intentionally omitted the following material information:

        a.   that testing of the Dual-ended Combat Arms earplug was deliberately flawed;
        b.   the amount of hearing protection provided by the Combat Arms earplug;
        c.   that Defendant was aware of the defects in the Dual-ended Combat Arms earplug;
        d.   that the Dual-ended Combat Arms earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;
        e.   that the Dual-ended Combat Arms earplug was manufactured negligently;
        f.   that the Dual-ended Combat Arms earplug was manufactured defectively;
        g.   that the Dual-ended Combat Arms earplug was designed defectively;
        h.   that the Dual-ended Combat Arms earplug was designed negligently; and,
        i.   that the Dual-ended Combat Arms earplug was designed improperly.

140.    Defendant was under a duty to disclose to Plaintiff the defective nature of the dual-end Combat Arms earplugs.

141.    Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the dual-end Combat Arms earplugs, including Plaintiff, in particular.

142.    Defendant's concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-end Combat Arms earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the dual-end Combat Arms earplug, and actions thereon, and to cause him or her to purchase and/or use the product. Defendant knew that Plaintiff had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the Dual-end Combat Arms earplugs, as set forth herein.

143.    Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

144.    By reason of the foregoing, Plaintiff was caused to suffer serious and dangerous side effects, including tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII
## FRAUD AND DECEIT

145.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

146.    Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms earplugs.

147.    As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

148. As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiff.

149. Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

150. The information distributed to Plaintiff by Defendant contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms earplugs.

151. These representations were all false and misleading.

152. Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

153. It was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplug and induce the public and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-ended Combat Arms earplugs.

154. Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms earplugs were fit and safe for use.

155. These representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

156.   These representations and others made by Defendant were made with the intention of deceiving and defrauding Plaintiff were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms earplugs.

157.   Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

158.   Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplug.

159.   Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendant and purchase, use, and rely on the Dual-ended Combat Arms earplugs.

160.   Plaintiff did in fact rely on and believe the Defendant's representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the Dual-ended Combat Arms earplugs.

161.   At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

162.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

163.    Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs, Plaintiff would not have used and/or relied on the Dual-ended Combat Arms earplugs.

164.    Defendant's aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

165.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIIII
## GROSS NEGLIGENCE

166.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

167.    The wrongs committed by Defendant were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow the imposition of punitive damages (and which Plaintiff seeks, as set forth below).

168.    Such punitive damages are appropriate given Defendant's conduct, as further alleged herein, which includes the failure to comply with applicable guidelines and standards, including but not limited to ANSI, OSHA, EPA, and MPID guidelines and standards, which recklessly

caused substantial injuries to Plaintiff (or, when viewed objectively from Defendant's standpoint at the time of the conduct, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others), of which Defendant was actually, subjectively aware of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, or included a material representation that was false, with Defendant knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

169.    Plaintiff relied on the representations and suffered injuries as a proximate result of this reliance.

170.    Plaintiff seeks to assert claims for punitive damages in an amount within the jurisdictional limits of the Court, as set forth below.

171.    Plaintiff also alleges that the acts and omissions of the Defendant, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiff seeks punitive damages in amounts that would punish Defendant for its conduct and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **PUNITIVE DAMAGES**

172.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

173.   Defendant has acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

    a.   By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs;

    b.   By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms earplugs;

    c.   By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

174.   Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms earplugs caused his injuries. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to Plaintiff.

175.   Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

176.   Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects in the Dual-ended Combat Arms earplugs.

177.   As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that the Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

178.   Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms earplugs, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms earplugs.

179.   Additionally, pursuant to the Service members Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. See 50 U.S.C. § 3936.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each of the above-referenced claims as follows:

1.   Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to loss of enjoyment of life, lost wages, loss of earning capacity, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.   Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of

Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct;

3.      Awarding Plaintiff reasonable attorneys' fees;

4.      Awarding Plaintiff the costs of these proceedings; and

5.      Such other and further relief as this Court deems just and proper.


Dated: May 30, 2019                             Respectfully submitted,

                                                _____
                                                Thomas R. Anapol (Pa. Bar No. 62121)
                                                tanapol@anapolweiss.com
                                                Anapol Weiss, PC
                                                130 N. 18th Street, Suite 1600
                                                Philadelphia PA 19103
                                                215.735.1130

                                                Shayna Slater (Pa. Bar No. 311007)
                                                sslater@anapolweiss.com
                                                Anapol Weiss, PC
                                                130 N. 18th Street, Suite 1600
                                                Philadelphia PA 19103
                                                215.735.1130

                                                *Attorney for Plaintiffs*